# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
       **Plaintiff,**

  v.                                                 **Case No. 07-CR-245**

**MARTIN VALADEZ**
       **Defendant.**

## SENTENCING MEMORANDUM

Defendant Martin Valadez pleaded guilty to wire fraud arising out of his participation in a mortgage fraud scheme, and I set the case for sentencing. In imposing sentence, I first determine the advisory guideline range, then determine the actual sentence under the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008). In this case, the parties agreed to a base offense level of 7, U.S.S.G. § 2B1.1(a)(1), a 14 level enhancement for loss, § 2B1.1(b)(1)(H), and 4 level enhancement for aggravated role, § 3B1.1(a). I found these calculations correct and adopted them. See United States v. Radziszewski, 474 F.3d 480, 486-87 (7th Cir. 2007) (discussing loss calculations in a mortgage fraud scheme). Based on defendant's prompt plea of guilty and expression of remorse, I granted a 3 level reduction under U.S.S.G. § 3E1.1, for a final offense level of 22. Coupled with his undisputed criminal history category of V, I adopted an imprisonment range of 77-96 months.

The government argued for a sentence of 84 months, while defendant requested a term of 48-60 months. Upon consideration of all of the § 3553(a) factors, I imposed a sentence of 72 months. This memorandum sets forth the reasons.

## I. SENTENCING FACTORS

The sentencing court must consider all of the factors set forth in § 3553(a), United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007), cert. denied, 128 S. Ct. 963 (2008), including:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute requires the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in § 3553(a)(2). Although the guidelines serve as the starting point and initial benchmark, Gall v. United States, 128 S. Ct. 586, 596 (2007), the district court may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007), or place any

"thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007). Rather, the court must make an independent determination of what sentence is sufficient but not greater than necessary, taking into account the advisory guideline range, the relevant § 3553(a) factors, and any non-frivolous arguments presented by the parties in support of a particular sentence. United States v. Wilms, 495 F.3d 277, 282 (6th Cir. 2007).

## II.  DISCUSSION

### A.  Nature of Offense

Defendant and a man named James Lytle devised and executed a mortgage fraud scheme, which involved Lytle, a mortgage broker, falsifying loan applications for unqualified and straw buyers, then submitting the applications in support of mortgage loans for residential properties. Defendant's role was to find individuals who, for a payment, would act as straw buyers. Usually, the straw purchaser defendant recruited would sign the loan documents, but on some occasions he and Lytle stole the identities of individuals with good credit scores, then found another person to pose as the buyer at closing.

Based on these false applications, lenders issued millions in funds, which included wire transfers. The loans went unpaid, went into default, and the properties were foreclosed. The government identified thirteen sales transactions involving twelve properties purchased with fraudulently obtained loans. The lenders suffered losses approaching $1,000,000 based on the foreclose sales not recouping the loan amounts. Defendant and Lytle profited by splitting inflated mortgage origination fees and from kickbacks from sellers who participated in the scheme.

3

**B.     Character of Defendant**

Defendant was thirty-one years old, with a significant prior record including two convictions for cocaine delivery; an escape conviction, which involved a walk-away from a Huber facility; and a drunk driving conviction. He was on probation for the second cocaine delivery case when he committed the instant offense, which resulted in his revocation and imposition of a three year sentence.

It appeared that defendant had a good childhood, raised as part of an intact family. His family seemed supportive. Defendant was married from 1999 to 2003 and had three children with his ex-wife, ages ten, nine and seven, who lived with her. He reported seeing his kids on weekends, but he owed a substantial amount in support arrears. Defendant re-married in 2003 and had three more children with his current wife, ages three, two and one.

Defendant admitted past use of controlled substances, but he did not appear to have a current problem. Defendant dropped out of high school, but he made some effort towards an HSED. He also obtained certificates for loan origination and asbestos abatement, and apparently had a job in asbestos abatement waiting when he finished this sentence. His previous employment record included loan origination and factory work. The record showed that defendant could find legitimate work when he wanted to, and as the government noted, he appeared to be an intelligent person who failed to make positive use of his talents.

**C.     Guidelines and Purposes of Sentencing**

The guidelines recommended a term of 77-96 months, and I agreed that a significant prison term was necessary to satisfy the purposes of sentencing. This was a serious crime, which involved rather brazen fraud and caused significant losses to lenders at a time when the

4

uncertain market caused enough problems. Further, defendant's significant prior record revealed that he presented a risk of re-offending. Only the fact that defendant had not, prior to his commission of this offense, served time in prison weighed against the need for a lengthy term to specifically deter defendant. See United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005).

Defendant presented two arguments for a lesser sentence, the first of which I found persuasive. Defendant actually served a little over a year in prison based on his revocation for the instant offense conduct, and I found it appropriate to take that sentence into account. According to the PSR, defendant admitted his conduct to his probation officer, leading to his revocation. (PSR ¶ 67.) The Seventh Circuit has recognized that when the conduct underlying the revocation and the instant offense is the same, a concurrent sentence would be reasonable, see United States v. Huusko, 275 F.3d 600, 603 (7th Cir. 2001), and had this case come before me before that sentence discharged, I would have imposed a concurrent term. I therefore considered the punishment previously imposed for the same conduct in fashioning the instant sentence.

Defendant also asked me to consider his cooperation with the government. However, the government filed a protective Fed. R. Crim. P. 35(b) motion prior to sentencing, and I decided to reserve the cooperation issue for the later Rule 35 proceeding.

### III. CONCLUSION

For the foregoing reasons, I committed defendant to the custody of the Bureau of Prisons for 72 months. I arrived at this figure by deducting 12 months from 84, the roughly mid-range term I otherwise would have imposed. Upon release, I ordered defendant to serve three years of supervised release, with conditions including drug testing and treatment, and various

5

special financial conditions to ensure protection of the public from further fraud and consistent payment of restitution to the banks. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 27th day of August, 2008.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge